**UNITED STATES of America,**
**Appellee,**

v.

**James Rinaldo JACKSON,**
**Defendant–Appellant.**

**Docket No. 02–1338.**

United States Court of Appeals,
Second Circuit.

Argued: June 16, 2003.

Decided: Oct. 1, 2003.

of credit card fraud in violation of 18 U.S.C. § 1029(a)(2), (b)(1), (c)(1)(B), mail fraud in violation of 18 U.S.C. § 1341, bank fraud in violation of 18 U.S.C. § 1344, wire fraud in violation of 18 U.S.C. § 1343, and conspiracy in violation of 18 U.S.C. § 371.

Gail Jacobs, Great Neck, N.Y., for Defendant-Appellant.

Lisa G. Horwitz, Asst. U.S. Atty., New York, N.Y. (James B. Comey, U.S. Atty., Adam B. Siegel, Asst. U.S. Atty., New York, N.Y., on the brief), for Appellee.

Before: NEWMAN, WINTER, and B.D. PARKER, JR., Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This sentencing appeal primarily concerns the appropriateness of an upward enhancement for use of "sophisticated means," U.S.S.G. § 2F1.1(b)(5)(C) (1998),[1] and whether a downward departure is available because of the cumulative effect of several enhancements to the defendant's base offense level. James Rinaldo Jackson appeals from the July 3, 2002, judgment of conviction and sentence entered by the District Court for the Southern District of New York (Deborah A. Batts, District Judge) upon his guilty plea. We conclude that the "sophisticated means" enhancement was properly imposed, but that the cumulative effect of all the enhancements permits the District Court to consider a downward departure. We therefore affirm the conviction, which is not challenged on appeal, and remand for consideration of resentencing.

## Background

Jackson was charged with twenty-nine counts of criminal activity, including counts

Jackson's criminal conduct involved identity theft to purchase valuable items and charge them to his victims' accounts. At his plea allocution, Jackson gave a detailed account of how he performed his criminal acts. For a typical scheme, Jackson would begin by identifying a wealthy target, usually a corporate executive, by searching the Internet. He would purchase personal information about the executive from an "information broker" on the Internet, then place calls to banks, credit card companies, and hotels and use the previously acquired personal information to convince whomever he was speaking to that he was the executive. He would thereby obtain more private information about the victim, such as account numbers and credit card expiration dates. He would sometimes increase the credit limit on the victim's accounts and change the billing address to the address of a hotel. Jackson used hotels in several different states for this purpose.

Jackson would then order merchandise, pay with the victim's credit card or bank account number, and have the merchandise shipped to the hotel address. Jackson generally ordered precious goods such as diamonds, and would have courier services or hotel employees take delivery of the items. He would later pose as the executive and pick up the ordered goods, which he would later sell for cash.

Jackson pleaded guilty to all twenty-nine counts of the indictment pursuant to a plea

---

1. Since the Appellant's offense conduct occurred in late 1999 and early 2000, the 1998 Sentencing Guidelines apply.

agreement. That agreement included the parties' stipulation concerning the appropriate calculations under the Sentencing Guidelines, but explicitly provided the parties' understanding that the Court would not be bound by the Guidelines stipulation. *See* U.S.S.G. § 6B1.4(d).

At sentencing, Judge Batts started with those aspects of the Guidelines calculation to which the parties had stipulated. From a base offense level of 6, *see id.* § 2F1.1(a), the Judge made the following upward adjustments: 10 levels because the relevant loss amount was between $500,000 and $800,000, *id.* § 2F1.1(b)(1)(K), 2 levels because the offense involved more than minimal planning, *id.* § 2F1.1(b)(2)(A), and 2 levels because Jackson's role was that of an organizer or leader of criminal activity, *id.* § 3B1.1(c). She then made a downward adjustment of 3 levels for acceptance of responsibility. *Id.* § 3E1.1(a), (b). These stipulated calculations produced an adjusted offense level of 17.

In addition to these stipulated adjustments, Judge Batts had informed the parties that she intended to apply an upward adjustment of 2 levels because Jackson used "sophisticated means" to carry out the offense, *id.* § 2F1.1(b)(5)(C), and an upward adjustment of 4 levels, instead of the stipulated 2 levels, for Jackson's role in the offense because he was the leader of an activity that was "otherwise extensive," *id.* § 3B1.1(a). In a letter to the Court, Jackson's counsel contested the applicability of the section 2F1.1(b)(5)(C) "sophisticated means" adjustment, but conceded that a four-level adjustment pursuant to section 3B1.1(a) was appropriate. Jackson submitted to the Court a letter he personally wrote confirming that he believed the section 3B1.1(a) four-level adjustment should apply to him.

At sentencing, Jackson's counsel confirmed that the Defendant conceded the applicability of the four-level enhancement under section 3B1.1(a) but contested the applicability of the two-level enhancement under section 2F1.1(b)(5)(C). The Court applied both enhancements. In explaining its decision to apply the "sophisticated means" enhancement under section 2F1.1(b)(5)(C), the Court observed that Jackson's offense conduct involved multiple "intricate steps and variations" and that "[w]hile the defendant may have used the telephone and the Internet basically, the Court finds that the use he put them to was sophisticated, meriting a two-level increase." The Court determined the total offense level to be 21, which, in the stipulated Criminal History Category of VI, produced a Guidelines range of 77 to 96 months' imprisonment. The Court sentenced Jackson primarily to 96 months' imprisonment.

## Discussion

### A. Role Adjustment

■ Although the Appellant concedes that he expressly waived any challenge to the District Court's decision to apply a four-level rather than a two-level adjustment for role under section 3B1.1(c), he argues on appeal that the adjustment constituted plain error. However, as the Government points out, plain error review is available only for issues "not intentionally relinquished or abandoned," *United States v. Gore*, 154 F.3d 34, 41 (2d Cir.1998). Where, as here, a claim has been waived through explicit abandonment, rather than forfeited through failure to object, plain error review is not available. *See United States v. Olano*, 507 U.S. 725, 733–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Yu–Leung*, 51 F.3d 1116, 1121–22 (2d Cir.1995); *see also United States v. Thorn*, 317 F.3d 107, 129 n. 16 (2d Cir. 2003) (discussing waiver/forfeiture distinction in sentencing context).

## B.  "Sophisticated Means" Adjustment

■ The Appellant challenges on several somewhat related grounds the two-level enhancement of his offense level for employing "sophisticated means" to accomplish his offense conduct. ·U.S.S.G. § 2F1.1(b)(5)(C). First, he contends that the offense conduct was simply not "sophisticated" in any sense of the word. He argues that the specific acts of his criminal activity, while admittedly fraudulent, were each individually no more intricate than "a game of Three–Card Monte." However, even if each step in the scheme was not elaborate, the total scheme was sophisticated in the way all the steps were linked together so that Jackson could perceive and exploit different vulnerabilities in different systems in a coordinated way. *See United States v. Lewis*, 93 F.3d 1075, 1083 (2d Cir.1996) (holding, in tax case, that sophisticated means enhancement applied even when "each step in the planned tax evasion was simple, [because] when viewed together, the steps comprised a plan more complex than merely filling out a false tax return").

Second, the Appellant argues that something more than cleverness is required in order to be "sophisticated" in the sense intended by section 2F1.1(b)(5)(C). The conduct, he contends, must involve "inside information," "special technology," "corporate shells," "offshore bank accounts," or something similar. Brief for Appellant at 22. The latter two examples are drawn from Application Note 15 to section 2F1.1. But the same note also provides the example · of a telemarketing operation that locates its main office in one jurisdiction but conducts operations in another, not an especially elaborate scheme. Jackson's use of hotels and courier services to take delivery of fraudulently obtained goods, his use of prepaid phone cards to prevent tracking of his activities, and his manipulations of victims' credit lines and billing addresses combine to indicate that the enhancement was merited.

Third, the Appellant contends that section 2F1.1(b)(5)(C) is not concerned with all sophisticated conduct, but "principally [with] a defendant's efforts to evade detection." Brief for Appellant at 16. Application Note 15 to section 2F1.1 indicates otherwise, as it expressly defines "sophisticated means" to include "conduct pertaining to the execution *or* concealment of an offense" (emphasis added).

Giving "due deference" to the District Judge's application of the Guidelines to the facts of the case, *see* 18 U.S.C. § 3742(e); *United States v. Berg*, 250 F.3d 139, 142 (2d Cir.2001), we are satisfied that the Judge was entitled to conclude that the requisite degree of sophistication was involved to merit the two-level enhancement.

## C.  Double Counting

■ The Appellant contends that the District Court's decision to apply the "sophisticated means" adjustment amounted to impermissible double counting. He argues that this adjustment duplicated the role adjustment for leadership of an "extensive" criminal activity. However, the imposition of two somewhat overlapping enhancements does not necessarily result in prohibited double counting. "[D]ouble counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis." *United States v. Campbell*, 967 F.2d 20, 25 (2d Cir.1992). Thus, Jackson's various acts of exploiting different strangers so as to accomplish the fraud while keeping his unwitting accomplices in the dark can serve as a foundation for both a "sophisticated means" enhancement and a role enhancement for "extensive" activity. Also, the enhancements do not necessarily rely on the same acts. As discussed, the "sophisticated means" enhancement is

justified by the elaborate, coordinated steps Jackson took to carry out the schemes. The leadership adjustment is justified by the fact that, in doing so, he employed numerous knowing and unknowing participants in an extensive activity. *Cf. United States v. Humber,* 255 F.3d 1308, 1314 (11th Cir.2001) (applying both sophisticated means and planning adjustments); *United States v. Rappaport,* 999 F.2d 57, 61 (2d Cir.1993) (applying role and planning adjustments). Although the adjustments somewhat overlap, their use is not impermissible double counting.

### D. Availability of a Departure

■ After the District Court imposed sentence in this case, we ruled in *United States v. Lauersen,* 343 F.3d 604 (2d Cir. 2003), that in some circumstances an accumulation of somewhat overlapping enhancements, even if not amounting to double counting, can justify a downward departure. Jackson's sentence illustrates the type of case that is eligible for a *Lauersen* departure. Although the enhancements imposed by the District Court are permissible, they are all little more than different ways of characterizing closely related aspects of Jackson's fraudulent scheme. Thus, his base level of 6 was increased 10 levels because his offense involved a large sum of money, another 2 levels because he carefully planned the activity, another 2 levels because he used sophisticated means, and another 4 levels because the scheme was

extensive. Even though these enhancements are sufficiently distinct to escape the vice of double counting, they substantially overlap. Most fraud schemes that obtain more than one half million dollars involve careful planning, some sophisticated techniques, and are extensive.

Moreover, a phenomenon of the Guidelines, graphically illustrated by this case, is that any one enhancement increases the sentencing range by a far greater amount when the enhancement is combined with other enhancements than would occur if only one enhancement had been imposed. *See United States v. Sofsky,* 287 F.3d 122, 124 n. 1 (2d Cir.2002). Here, the four-level role enhancement for an extensive scheme would have increased the minimum of the applicable sentencing range by 12 months if no other enhancement applied,[2] but because three other enhancements applied, the four-level role enhancement for leadership of an extensive scheme increased the minimum of the applicable sentencing range by 26 months.[3] As in *Lauersen,* we think these enhancements combine to have a cumulative effect that is present "to a degree" not adequately considered by the Commission, *see* 18 U.S.C. § 3553(b), and therefore make available, in the discretion of the District Court, a downward departure. *See Lauersen,* 343 F.3d at 618–19. Since the District Court did not have the benefit of our decision in *Lauersen,* an appropriate disposition is to remand so that a departure may be considered.[4]

2. At base offense level 6 in CHC VI, a four-level enhancement increases the minimum of the applicable sentencing range from 12 months to 24 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).

3. With three adjustments taking the base offense level up from 6 to 17 (after the three-level reduction for acceptance of responsibility), the additional four-level role enhancement for leadership of extensive activi-

ty increases the minimum of the applicable sentencing range from 51 months to 77 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).

4. As in *Lauersen,* 343 F.3d at 619 n. 16, the PROTECT Act's limitation on departures upon remand, *see* 18 U.S.C. § 3742(g)(2)(A), even if applicable where an initial sentence occurs before the effective date of the Act, would not bar a departure here because the

## Conclusion

The conviction is affirmed, the challenges to the sentence as imposed are rejected, and the case is remanded for consideration of a downward departure.

District Court made no departure at the original sentencing. The purpose of the new subsection 3742(g) is to "prevent sentencing courts, upon remand, from imposing the same illegal departure on a different theory." H.R. Conf. Rep. 108–66, at 59 (2003), reprinted in 2003 U.S.C.C.A.N. 683, 694.