**UNITED STATES of America, Appellee,**

v.

**Mordechai SAMET and Chaim Hollender, Defendants–Appellants.**

**Nos. 03–1420, 03–1433.**

United States Court of Appeals, Second Circuit.

Sept. 11, 2006.

Diarmuid White, (Brendan White, on the brief), New York, NY, for Appellant Samet.

Andrew Citron, New York, NY, for Appellant Hollender.

Maria A. Barton, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Margery B. Feinzig, Cathy Seibel, Laura Grossfield Birger, Celeste L. Koeleveld, Assistant United States Attorneys, on the brief), New York, NY, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Hon. SONIA SOTOMAYOR and Hon. PETER W. HALL, Circuit Judges.

## SUMMARY ORDER

Mordechai Samet and Chaim Hollender appeal from their July 1, 2003 judgments of conviction in the United States District Court for the Southern District of New York (McMahon, *J.*). Appellants were charged with conducting and participating in the affairs of a racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), as well as several other violations of Title 18 of the United States Code including, *inter alia*, 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C § 1956(h) (money laundering), and 18 U.S.C. §§ 286, 287 (tax fraud). Each of these additional counts correspond to predicate acts alleged as part of the RICO charge. Following a jury trial, Samet was convicted on Count One (RICO), Count Two (mass mailing), Counts 3–10, 12, 14–18, 20, 23, 24 (leasing scheme), Counts 26–29, 31, 33–35 (bank fraud), Counts 38–40, 42 (life insurance scheme), Counts 47, 50–51 (tax scheme), and Count 48 (money laundering). Hollender was convicted on Count 1 (RICO), Count 2 (mass mailing scheme), Counts 7–8, 12, 14–16, 18–20 (leasing scheme), Counts 30, 35–37 (bank fraud), Count 46 (credit card scheme), and Count 48 (money laundering).

Appellants raise a host of arguments on appeal. We write a separate opinion today addressing Hollender's claim that the district court erred by refusing to strike lay opinion testimony identifying his handwriting. We address here Hollender's challenges to the sufficiency of the evidence as to several counts; the introduction of certain evidence resulting from a covert search; the introduction of several co-defendants' plea allocutions; the district court's refusal to strike a juror; and Hollender's sentence. We also address Samet's

challenges to the introduction of the plea allocutions; the district court's failure to strike references to the racketeering enterprise from the indictment; the admission of past conduct as background evidence; and his sentence. We assume the parties' familiarity with the facts and procedural history.

### 1. Sufficiency of the evidence

█ Hollender argues that there was insufficient evidence to show that he made false statements in connection with the credit card scheme, that there was insufficient evidence of an ongoing racketeering enterprise and a single conspiracy to launder money, and that there was insufficient evidence of his knowledge regarding the fraudulent nature of the mass mailing scheme. Hollender also summarily attacks the sufficiency of the evidence supporting his conviction on all other counts but one. An appellant bears a "heavy burden" in challenging the sufficiency of the evidence. *United States v. Diaz*, 176 F.3d 52, 89 (2d Cir.1999). Although the sufficiency of the evidence is reviewed *de novo*, this Court views the evidence in the light most favorable to the government and draws all inferences in its favor. *United States v. Gaskin*, 364 F.3d 438, 459 (2d Cir.2004). "Reversal is warranted only if no rational factfinder could have found the crimes charged proved beyond a reasonable doubt." *Id.* at 459–60. Having reviewed the record and relevant case law, and considered, *inter alia*, tapes of intercepted conversations, seized documents, records and materials, and Hollender's management position within the scheme, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Hollender committed each of the various crimes which he now challenges.

### 2. Introduction of plea allocutions

█ Samet and Hollender both challenge the introduction of their co-defendants' plea allocutions. In light of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the district court erroneously admitted the plea allocutions in violation of the Confrontation Clause. *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir.2004) (noting that "a plea allocution by a co-conspirator who does not testify at trial may not be introduced as substantive evidence against a defendant unless the co-conspirator is unavailable and there has been a prior opportunity for cross-examination"). Violations of the Confrontation Clause are subject to harmless error review. *Id.* For the following reasons, we conclude that admission of the plea allocutions was harmless beyond a reasonable doubt. The allocutions were admitted solely to prove the existence of the racketeering enterprise and money laundering conspiracy, and they were entirely cumulative of other evidence establishing the existence of the enterprise and conspiracy. Moreover, the district court was careful to give limiting instructions to the jury, instructing them that the allocutions could only be considered as evidence that the enterprise and conspiracy existed. *See id.*

### 3. Language in the indictment

█ Samet contends that a reference in the indictment to the "Samet Group" should have been struck as surplusage. This objection has been waived because it was not raised prior to trial. *See* Fed. R.Crim.P. 12(b)(3), 12(e); *United States v. Crowley*, 236 F.3d 104, 110 (2d Cir.2000) (finding an objection to an indictment as being too vague was waived because it was not raised before trial). Even if this argument was not waived, it lacks merit. At trial there was no reference to the enterprise as the "Samet Group," nor was there

any reference to the "Samet Group" in the plea allocutions. Coupled with the district court's jury instructions and overwhelming evidence of Samet's involvement in the RICO enterprise, the reference in the indictment to the "Samet Group" was not prejudicial. *See United States v. Hernandez*, 85 F.3d 1023, 1030 (2d Cir.1996) (noting that motions to strike surplusage should only be granted where the challenged sections are not relevant and are inflammatory and prejudicial) (citation omitted).

### 4. *Evidence seized during a covert search*

▊ Hollender argues that the introduction of evidence obtained as a result of a covert search violated the rule in *United States v. Villegas*, 899 F.2d 1324 (2d Cir. 1990), that notice should be delayed only for a "reasonable time after the covert entry" but "as an *initial* matter, the issuing court should not authorize a notice delay of longer then seven days." *Id.* at 1337 (emphasis added). This argument is without merit. The warrant authorizing a covert search was issued by the United States District Court for the Southern District of New York (Brieant, *J.*) on September 6, 2000. The covert search was conducted on September 9, 2000, and six days later the government submitted its first report to the court requesting a delay in notification of the search. Thus, the *initial* report was made within seven days, and subsequent requests for delay were filed at "reasonable times."

▊ Hollender further claims that the subsequent requests were not based on the required "fresh showing." Each request for a delay, however, was accompanied by a report explaining the government's reasons for the request. In particular, the reports noted the impact that disclosure of the search would have on the government's ongoing investigation. Nor is it fatal that

all of the applications for further delay were based on the same or similar reasons. Nothing in *Villegas* prohibits the applicant for delayed notice from relying on the same evidence which was used to justify the initial grant. As the district court aptly noted in *United States v. Heatley*, No. S11 96 CR. 515, 1998 WL 691201, at *5 (S.D.N.Y. Sept.30, 1998) (Sotomayor, *J.*), "[t]he important point is that the extensions should be independently justified and not simply a pro forma exercise."

### 5. *Evidence of other crimes*

▊ With regard to "other crimes" evidence, Samet contends that the district court abused its discretion by admitting stipulated testimony of an FBI agent. The stipulated testimony, which Samet characterizes as evidence of uncharged crimes, related to admissions Samet made to the agent regarding the nature of the racketeering enterprise and background evidence of a charged crime. "Background evidence may be admitted to show ... the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir.1991); *see also United States v. Miller*, 116 F.3d 641, 682 (2d Cir.1997) (admitting evidence of uncharged acts as evidence of "existence and nature of the enterprise" not subject to Fed.R.Evid. 404(b)). The district court, therefore, did not abuse its discretion in admitting the stipulated testimony. Even if the district court erred in admitting Samet's statements, that error was patently harmless in light of the overwhelming evidence against Samet. Indeed, Samet does not even challenge (as Hollender has done) the sufficiency of the evidence.

### 6. *The district court's refusal to discharge a juror*

▊ Hollender's argument that the district court should have discharged a juror

for communicating with the courtroom deputy is also without merit. The courtroom deputy's statement to the juror in response to a question about attending a sentencing was not of the type to raise concerns about prejudice. *See Manley v. Ambase Corp.*, 337 F.3d 237, 252 (2d Cir. 2003) (noting the three categories of communications that most frequently raise prejudice concerns, none of which apply here). To the extent that Hollender contends that the juror had pre-judged the case, *voire dire* of the juror revealed that he had not made up his mind and could discharge his duty to decide the case based on the record.

### 7. Sentencing

■■■ Both Appellants raise a host of issues with regard to sentencing. Samet argues that the district court impermissibly considered his religious background in sentencing. Specifically, he points to three times during the sentencing hearing in which the district court made scriptural references. While religion should play no role in the administration of justice, *cf. United States v. Edwardo–Franco*, 885 F.2d 1002, 1005 (2d Cir.1989) (stating that "race and nationality should play no adverse role in the administration of justice"), a passing reference to a defendant's religious background is not sufficient to warrant a remand for resentencing. *Cf. United States v. Jacobson*, 15 F.3d 19, 23 (2d Cir.1994) (stating that reference to a defendant's national origin and naturalized status is permissible as long as it is not the basis for determining his sentence). Here, the district court's comments were made so that the sentence would resonate with Samet. In no respect do the references indicate that Samet's religion was a basis on which the sentence was imposed.

■■■ Hollender challenges the district court's calculation of the amount of fraud loss. The pre-sentence investigation report ("PSR") calculated the total fraud loss to be $3,793,692. In particular, Hollender argues that the amount of loss calculated for the mass mailing scheme should have been reduced by amounts actually refunded and should have reflected the fact that some nominal prizes were awarded and that a few individuals did not pay. The amount of fraud loss, however, should not be reduced by any amounts returned to the victims. *United States v. Coriaty*, 300 F.3d 244, 251 (2d Cir.2002) (stating that, under § 2F1.1, "loss in fraud cases includes the amount of property taken, even if all or part has been returned" and that "loss may consist of probable or intended loss") (internal quotation marks and citation omitted). Regarding those bondholders that did not pay for their bonds, whom Samet and Hollender allege they did not intend to defraud, we decline to reach the issue because those amounts in question are too small to affect the loss enhancement.

■■■ With respect to the leasing scheme and bank fraud, Hollender argues that the district court erred by considering those counts for which he was acquitted. However, "[i]t is well-settled that acquitted conduct can be taken into account in sentencing and that a preponderance of the evidence is all that is required to prove the amount of loss." *United States v. Singh*, 390 F.3d 168, 191 (2d Cir.2004). Hollender's contention that the calculation of loss from the leasing and credit schemes should be reduced because he expected that lease applications and credit card disputes would be denied is also without merit. As the district court noted with respect to the credit card scheme, Hollender's objection "seems to be that he thought he would not get away with as much fraud as he tried to commit." As already discussed, moreover, the Guidelines allow for calculation based on intended loss.

Hollender also contests the calculation of the amount of money he laundered. The PSR, however, carefully set out the amount laundered, tracing it back to completed frauds. Hollender also suggests that the district court should have held a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir.1979), regarding his connection to the Free Loan Menachem Union account used to launder lease proceeds and promote other leasing frauds. A district court enjoys broad discretion to determine procedures by which sentencing issues will be resolved. *See United States v. Slevin*, 106 F.3d 1086, 1091 (2d Cir.1996). In light of Hollender's conviction for money laundering and the opportunities he had, both at trial and through his sentencing submissions, to contest the evidence, the district court did not abuse its discretion in declining to hold a *Fatico* hearing.

Samet and Hollender next challenge an enhancement pursuant to U.S.S.G. § 2F1.1(b)(5)(C)(ii). That Guideline provides for a two-level increase to the base offense level for fraud where the offense involved the "possession of 5 or more means of identification that unlawfully were produced from another means of identification or obtained by the use of another means of identification." *Id.* Both Samet and Hollender used names, dates of birth, and social security numbers of other individuals in order to obtain leases. The question is whether a lease constitutes a "means of identification" within the meaning of the Guideline. We agree with the district court that it does. The Application Notes following the Guidelines define "means of identification" by reference to 18 U.S.C. § 1028(d)(3) (now codified at 18 U.S.C. § 1028(d)(7)), which in turn defines the term as "any name or *number* that *may* be used, alone or in conjunction with any other information, to identify a specific individual." *Id.* (emphasis added). The Note then describes the use of names and

social security numbers to obtain a bank loan or a credit card as conduct to which the Guideline should apply, explaining that the bank loan account number or credit card number is the "means of identification." Both the statute and the Note focus on the generation of a unique identifying number different than any number used to obtain it, not on whether a document would be proffered as a form of identification, as Samet and Hollender contend. Like the account number of a bank loan, the account number of the leases thus constitute "means of identification," and because they were obtained unlawfully, Samet's and Hollender's base offense levels were appropriately enhanced.

The district court further enhanced Hollender's base offense level for the use of mass marketing to commit the fraudulent bond and charity offenses. *See* U.S.S.G. § 2F1.1(b)(3). Hollender claims that the enhancement violates the *ex post facto* clause because this amendment became effective November 1, 1998, roughly six years after the alleged start of the RICO enterprise. A substantive RICO offense, however, is a *continuing* crime. *See United States v. Wong*, 40 F.3d 1347, 1366 (2d Cir.1994) (citing *United States v. Moscony*, 927 F.2d 742, 754 (3rd Cir. 1991)). Here, the charged RICO offense spanned from approximately 1992 through March 2001. Accordingly, there is no *ex post facto* violation. *See United States v. Butler*, 954 F.2d 114, 120–21 (2d Cir.1992) (holding that the Sentencing Guidelines were properly applied to a RICO conviction where the defendant's pattern of racketeering activity supporting the RICO conviction was conducted both before and after the straddle date).

Hollender also argues that the district court improperly double counted an enhancement, pursuant to U.S.S.G. § 2F1.1(b)(6)(C), for employing sophisti-

cated means to accomplish the fraud. He argues that the district court had already considered the same underlying conduct in calculating his Guidelines range when it took into account his money laundering conviction. The imposition of somewhat overlapping enhancements does not necessarily mean double counting has occurred. *United States v. Jackson*, 346 F.3d 22, 25 (2d Cir.2003). Indeed, "[d]ouble counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis." *Id.* (quoting *United States v. Campbell*, 967 F.2d 20, 25 (2d Cir.1992)). There was no impermissible double counting here because the sophisticated means enhancement was relevant to more than one aspect of Hollender's conduct. Hollender used fake identities, identification documents, addresses, entities, and charities for a variety of his nefarious activities; the use of sophisticated means was not unique to his money laundering activities. It was also used to accomplish the underlying frauds.

Both Samet and Hollender challenge the district court's decision not to grant downward departures. Each challenges on different grounds the district court's imposition, pursuant to U.S.S.G. § 2F1.1(b)(4)(A), of a two-level enhancement for misrepresenting that they were acting on behalf of religious and charitable organizations. Hollender argues that the court was required to offset that enhancement with a corresponding two-level downward departure because that particular fraud represented only a tiny percentage of the overall fraud. Samet argues that the case should be remanded for resentencing pursuant to *United States v. Lauersen*, 362 F.3d 160 (2d Cir.2004), because the district court misapprehended its ability to depart downward in light of the great impact that the two-level enhancement had on his high offense level. Hollender also argues that the district court should have departed based on the conditions of his pre-trial confinement.

▮ In general, we will not review a denial of a motion for a downward departure. *See United States v. Scott*, 387 F.3d 139, 143 (2d Cir.2004). An exception exists, however, where the district court was "unaware of, or misconstrued, its authority under the Guidelines to grant a downward departure." *United States v. Galvez–Falconi*, 174 F.3d 255, 257 (2d Cir.1999). Neither appellant has established that the district court was unaware of or misconstrued its authority. Indeed, the district court made clear that it was rejecting appellants' motions as a matter of its discretion. Samet's argument that the court should have departed based on *Lauersen* is also unavailing. In *Lauersen*, we recognized for the first time that the "combined effect of substantially overlapping offense level adjustments and the increased extent of enhancement of the applicable sentencing range that occurs at the higher end of the sentencing table" may warrant a downward departure. 362 F.3d at 161. The enhancement Samet challenges, however—misrepresenting that he was acting on behalf of a charitable organization—does not "substantially overlap" with the other offense level adjustments. Rather Samet merely seeks to eliminate the effect of the enhancement based on the significant effect it would have on his sentence, which the district court did not have to do.

▮ Finally, because Appellants were sentenced under a mandatory Guidelines regime, we must remand for the district court to consider whether it would have imposed a non-trivially different sentence had it known at the time of sentencing that the Guidelines were not mandatory, and if so to resentence the defendant. *See United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005); *see also United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

We have considered Hollender's and Samet's remaining arguments and find them to be without merit. For the foregoing reasons, and those in the opinion filed contemporaneously with this summary order, the judgment of the district court is **AFFIRMED** and the case is **REMANDED** for further consideration in light of *Booker* and *Crosby*.