NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 25, 2012
Decided May 15, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-3522

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | 08 CR 466-6 |
| QIANA BISHOP-OYEDEPO, | |
| *Defendant-Appellant*. | Samuel Der-Yeghiayan, |
| | *Judge*. |

**O R D E R**

Qiana Bishop-Oyedepo, a loan officer, submitted fraudulent mortgage applications as part of an elaborate scheme to defraud mortgage lenders. The applications were submitted in the names of stolen identities, and other schemers were able to obtain the mortgage proceeds after they used the stolen identities to pose as phony purchasers and sellers at staged real-estate closings. After pleading guilty to two counts of wire fraud, 18 U.S.C. § 1343, Bishop-Oyedepo was sentenced to 41 months' imprisonment, the bottom of her applicable guidelines range. On appeal she argues that the district court clearly erred when it found that her offenses "involved sophisticated means" and increased her offense

level by two. *See* U.S.S.G. § 2B1.1(b)(10)(C).[1] Because Bishop-Oyedepo knew of the scheme and the scheme as a whole was sophisticated, we affirm the sentence.

## Background

Bishop-Oyedepo and 11 others were charged in a 20-count indictment with scheming to defraud mortgage lenders through a series of staged real-estate transactions and mortgage applications based on stolen identities. The scheme's principal organizer, Freddie Johnson, recruited others to identify homes unencumbered by liens and have those homes fraudulently appraised. Johnson then obtained stolen identities to use as "purchasers" of the homes and had loan officers, including Bishop-Oyedepo, submit multiple mortgage applications for each stolen identity. To maximize the loan amounts extended by the lenders, the participating loan officers misrepresented the income, assets, and employment of each phony "purchaser." The loan officers also submitted the applications to different lenders to conceal the schemers' fraud.

Once financing for the real-estate transactions was secured, the schemers staged "closings" where they and other recruits finalized the mortgage loans by posing as homeowner purchasers, sellers, and their representatives. The schemers then received "proceeds checks" sent by the lenders to the "sellers" and were able to cash the checks at currency exchanges. Johnson deposited some of the proceeds into corporate entities controlled by the schemers. Between 2003 and 2005, the schemers staged at least 17 real-estate transactions and defrauded 13 lenders of almost $3.7 million.

The government charged that Bishop-Oyedepo participated in the scheme in July and August 2004 by submitting three fraudulent mortgage applications for "Keisha Harris," one of the stolen identities. The applications—each seeking financing to purchase a different home—falsely stated that "Harris" intended to occupy the homes as her primary residence and did not disclose that she had purchased or was in the process of purchasing other properties. Lenders lost almost $700,000 on the three loans extended to Keisha Harris.

After Bishop-Oyedepo pleaded guilty without a plea agreement to the government's charges, a probation officer prepared a presentence report. Although the probation officer noted that Bishop-Oyedepo had pleaded guilty only to submitting fraudulent mortgage

---

[1] On November 1, 2011, former U.S.S.G. § 2B1.1(b)(9)(C) was redesignated as § 2B1.1(b)(10)(C) because of the insertion of a new subdivision (8). U.S.S.G. App. C, Amendment 749. At the time of Bishop-Oyedepo's sentencing, in October 2011, the sophisticated-means adjustment was still designated as § 2B1.1(b)(9)(C).

applications for Keisha Harris, she agreed with the government's assertion that Bishop-Oyedepo was "among the more culpable" offenders in the scheme and attributed the full scheme to her as relevant conduct. Based on Bishop-Oyedepo's relevant conduct, the probation officer increased her offense level by two because her offenses involved "the unauthorized . . . use of any means of identification unlawfully to produce or obtain any other means of identification," *see* U.S.S.G. § 2B1.1(b)(11)(C)(i), and by an additional two levels because her offenses "involved sophisticated means," *see id.* § 2B1.1(b)(10)(C).

Bishop-Oyedepo objected to both adjustments and denied participating in the scheme. She acknowledged submitting mortgage applications in Harris's name that contained false information, but insisted she did not know that a larger scheme existed or that Keisha Harris was a stolen identity. She also argued that the sophisticated-means adjustment could not apply to her because her own criminal actions were not sophisticated.

Because of the factual disputes about Bishop-Oyedepo's knowledge and participation in the scheme, the district court continued her first sentencing hearing and invited the parties to consider whether an evidentiary hearing was necessary. The government responded that it intended to have Johnson testify about Bishop-Oyedepo's involvement in many of the phony real-estate transactions, her knowledge of the identify-theft element of the scheme, and his payment of $5,000 to her for her help in a fraudulent transaction—involving a phony purchase by "Richard Grissom"—that occurred more than a year before the Keisha Harris transactions. Perhaps wary of the government's evidence, Bishop-Oyedepo decided that an evidentiary hearing was not necessary and agreed to have the court assess her actions based only on counsel's arguments.

The district court proceeded to accept the probation officer's recommendation to apply both the sophisticated-means and identify-theft adjustments to Bishop-Oyedepo's guidelines range. Citing the evidence discussed by the government, the court found that Bishop-Oyedepo knew of the identity-theft element of the scheme and had assisted in the "Richard Grissom" transaction. The court also found that the sophisticated-means adjustment was appropriate because the schemers deposited stolen assets into corporate entities, and "hiding assets or transactions . . . through the use of fictitious entities" is an example listed in the guidelines for "sophisticated means." *See* U.S.S.G. § 2B1.1 cmt. n.8(B). Whether Bishop-Oyedepo's individual actions were sophisticated does not matter, the court concluded, because "[t]he scheme in its totality was sophisticated and the defendant was an integral part of the scheme."

## Analysis

On appeal Bishop-Oyedepo challenges only the district court's application of the sophisticated-means adjustment to her guidelines range. Instead of challenging the court's

findings that she was an integral part of the scheme or that the scheme as a whole was sophisticated, she merely repeats her argument that the adjustment was improper because her own actions were not sophisticated. According to Bishop-Oyedepo, she only submitted mortgage applications that required no corroborating documentation, and she rightly reads the application note to § 2B1.1(b)(10)(C) as equating "sophisticated means" to offense conduct that is "especially complex or especially intricate." U.S.S.G. § 2B1.1 cmt. n.8(B).

What Bishop-Oyedepo overlooks is that even if her individual actions did not rise to the level of "sophisticated means," the adjustment may be applied to a defendant who engages in jointly undertaken criminal activity "so long as the use of sophisticated means by other criminal associates was reasonably foreseeable" to the defendant. *United States v. Green*, 648 F.3d 569, 576 (7th Cir. 2011); *see United States v. Cosgrove*, 637 F.3d 646, 666 (6th Cir. 2011); *United States v. Jenkins-Watts*, 574 F.3d 950, 965 (8th Cir. 2009). Here, the district court's finding that Bishop-Oyedepo *knew* of the full scheme establishes that the other schemers' actions were reasonably foreseeable to her, and she does not challenge the court's finding that the scheme as a whole was sophisticated. She would not prevail if she did because the scheme she participated in was at least as complex as schemes in other cases in which we have upheld the adjustment. *See, e.g., Green*, 648 F.3d at 572, 576–77 (upholding sophisticated-means adjustment for defendant who participated in scheme involving fraudulent mortgage applications, fake documents, and nearly 20 schemers); *United States v. Knox*, 624 F.3d 865, 867–70, 871–72 (7th Cir. 2010) (upholding sophisticated-means adjustment for defendant who participated in scheme involving use of inflated property appraisals and false loan applications to deceive purchasers and sellers and defraud mortgage lenders of $7 million); *see also United States v. Jackson*, 346 F.3d 22, 25 (2d Cir. 2003) (upholding sophisticated-means adjustment because "even if each step in the scheme was not elaborate, the total scheme was sophisticated in the way all the steps were linked together . . . ."). Because Bishop-Oyedepo knew of the scheme and the scheme as a whole was sophisticated, the adjustment was appropriate regardless of the sophistication of her individual actions.

Bishop-Oyedepo also agues that the district erred in applying § 2B1.1(b)(10)(C) because, she contends, no sophistication was needed to accomplish mortgage fraud at the time of her crimes. She refers to the mortgage market in 2004 as an "aberrant period of time" in which mortgage applications were routinely approved without any supporting documentation. But this argument, like her first argument, ignores the details of how the scheme in which she participated actually functioned. Whether successful mortgage fraud necessarily *required* sophisticated means has no bearing on whether the actual scheme itself was sophisticated, and for the reasons already given, the court did not err in finding that the scheme involved sophisticated means.

**AFFIRMED**.