**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Susan S. HALL, Defendant–Appellant.**

No. 95–5314.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1995.

Decided Dec. 12, 1995.

Hugh B. Ward, Jr. (argued and briefed), Office of U.S. Atty., Knoxville, TN, for plaintiff-appellee.

Leah J. Prewitt (argued and briefed), Federal Defender Services, Knoxville, TN, for defendant-appellant.

Before: MERRITT, Chief Judge; DAUGHTREY and OAKES,* Circuit Judges.

MERRITT, Chief Judge.

Defendant, Susan Hall, appeals from the sentence imposed by the District Court after her plea of guilty to conspiracy to commit bank fraud, bank fraud in several jurisdictions, and related firearm violations. She challenges the District Court's application of two provisions of the Sentencing Guidelines, its failure to · depart downward from the Guidelines, and the amount of restitution ordered.

Defendant claims that (1) the District Court improperly assessed a two-point increase in the offense level under United States Sentencing Commission, *Guidelines Manual,* § 2F1.1(b)(4) (Nov.1994) for "conscious or reckless risk of serious bodily injury"; (2) that the court incorrectly assessed additional criminal history points for previous "worthless check" convictions even though they are not "similar" to bank fraud for the purposes of U.S.S.G. § 4A1.2(c)(1)(B); and (3) that the court failed to recognize Defendant's overwhelming evidence of coercion as a permissible basis for downward departure. We agree with Defendant on these claims and therefore REVERSE and REMAND to the District Court for resentencing in accordance with this opinion.

---

* The Honorable James L. Oakes, Circuit Judge of the United States Court of Appeals for the Sec-

Defendant also contends that the court should not have ordered restitution under 18 U.S.C. § 3664 (1988) given Defendant's financial position and earning potential. For the reasons set forth below, we AFFIRM the District Court's order of restitution.

## I. FACTS

From January through June of 1994, Defendant Susan Hall and her husband, Kenneth Hall, committed bank fraud in several southern states, using false names and identification to open bank accounts and depositing worthless checks from other accounts while withdrawing cash for their personal use. The amount of the fraud totalled over $122,000.

In June, 1994, while attempting to open an account in Greeneville, Tennessee under the name "Jeanette Ellis," Defendant was discovered by a bank employee who notified the police. Defendant returned to her hotel, collected her belongings, and left in a van driven by Mr. Hall. They lead the police on a lengthy high-speed chase, which ended in a crash injuring the Defendant. She pled guilty to bank fraud, conspiracy to commit bank fraud, and a number of firearm violations and was sentenced to forty-six months of imprisonment to run concurrently with forty-six months for other counts and five years of supervised release; she was ordered to pay a $500.00 fine and $27,500 in restitution.

The record indicates that the Defendant has significant emotional problems and a history of drug and alcohol abuse associated with her experience of sexual and emotional abuse as a child. J.A. at 87. She also appears to have suffered serious physical and emotional abuse at the hands of Mr. Hall. Her reports of violence and gun-threats by Mr. Hall were corroborated by him in letters he wrote to her from prison. J.A. at 89.

The Bureau of Prisons, summarizing Ms. Hall's background in its forensic evaluation, described Mr. Hall's treatment of the Defendant as follows:

ond Circuit, sitting by designation.

This progression of charm, beatings, gun threats, and threats of abandonment appears to have been a calculated method of controlling Ms. Hall. For her part, Ms. Hall seems to have believed compliance with her husband's demands was her only reliable means of exercising control and gaining predictability in her life.

J.A. at 99. It would not be unreasonable to conclude that her husband beat and cajoled her into submission to his will. A separate psychological evaluation of the Defendant describes her as suffering from "post traumatic stress disorder" and, in particular, "Battered Person Syndrome." J.A. at 87.

## II. ANALYSIS

### A. Two-level increase under U.S.S.G. § 2F1.1(b)(4)

■ Defendant claims that the District Court erred in assessing a two-point increase in offense level under U.S.S.G. § 2F1.1(b)(4). That section of the Guidelines, which covers "Offenses Involving Fraud or Deceit," provides a two-level increase "[i]f the offense involved the conscious or reckless risk of serious bodily injury." The provision falls in the section for "offense conduct" under the heading "specific offense characteristics." Defendant contends that this provision was meant to apply only where the risk of bodily injury results *from the fraud itself* and not from events that happen while fleeing from the crime. For three reasons, we agree.

*First,* in all of the cases interpreting this guideline provision, the fraudulent conduct itself created the risk of serious bodily injury. For example in *United States v. Mizrachi,* 48 F.3d 651 (2nd Cir.1995), the defendant's fraud consisted of buying and insuring a building and then committing arson to collect the proceeds. The risk of injury from the arson was considered part and parcel of the scheme to defraud. In *United States v. Echevarria,* 33 F.3d 175 (2d Cir.1994), the defendant's fraud consisted of passing himself off as a licensed physician and practicing medicine; the risk of bodily harm proceeded directly from the fraudulent practice of medicine. Similarly, in *United States v. Laughlin,* 26 F.3d 1523 (10th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 428, 130 L.Ed.2d 342

(1994), the defendant physician performed unnecessary surgery to collect Medicaid payments, again the risk of bodily injury proceeding from the fraudulent scheme itself. *See also United States v. Hoffman,* 9 F.3d 49 (8th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 1320, 127 L.Ed.2d 669 (1994) (defendant arranged slow-speed accidents, feigned injury, and submitted fraudulent insurance claims for medical bills and lost wages). The Government could cite no cases, and indeed we have found none, where the provision was applied to the risk of injury created in fleeing from the crime.

*Second,* the relevant legislative history suggests that Defendant's reading of the provision is correct. Section 2F1.1(b)(4) was added to the Guidelines after Congress directed the following:

> [T]he United States Sentencing Commission shall promulgate guidelines, to provide for appropriate penalty enhancements, where conscious or reckless risk of serious personal injury *resulting from the fraud* has occurred. The Commission shall consider the appropriateness of assigning to such a defendant an offense level under Chapter Two of the sentencing guidelines that is at least two levels greater than the level that would have been assigned had conscious or reckless risk of serious personal injury not resulted *from the fraud.*

18 U.S.C.A. § 1031 (Supp.1995), historical and statutory notes (emphasis added).

*Finally,* a different provision, U.S.S.G. § 3C1.2, penalizes "Reckless Endangerment During Flight" and appears to be more suited to the present circumstances. Section 3C1.2, which falls under the heading of Adjustments for Obstruction of Justice, provides this two-level increase: "If the defendant recklessly created a substantial risk of death or bodily injury to another person in the course of fleeing from a law enforcement officer ..." Thus, § 3C1.2 is the provision which contemplates the type of facts at issue here.

■ Even more problematic than the District Court's interpretation of § 2F1.1(b)(4) is the manner in which it applied that provision to this defendant. As ordinarily happens in

a sentencing case, the probation officer outlined its factual findings and suggested guidelines application in its presentence report. The District Court then adopted the recommendations of the presentence report in its judgment. In this case, however, the guideline application and supporting reasoning found in the presentence report were wrong. Unable to apply § 2F1.1(b)(4) directly to the Defendant, the presentence report applied the two-level increase using § 1B1.3, a "relevant conduct" provision which provides for offense level increases based on a co-conspirator's foreseeable behavior. The report noted that the "defendant was not the driver of the motor vehicle," but that she was a "willing participant in the attempt to evade arrest." J.A. at 123. It is improper, however, to attempt to expand § 2F1.1 through § 1B1.3 in this manner. The upward adjustment permitted by § 2F1.1(b)(4) serves a specific and limited purpose, to punish those whose fraudulent behavior directly causes the risk of serious bodily injury. That purpose is not served here. "Relevant conduct" under § 1B1.3 is a distinct concept and should not be used to broaden enhancements such as this one designed for a specific limited purpose. The presentence report improperly attempted to bootstrap an adjustment under § 2F1.1 using § 1B1.3, and the District Court erred by adopting this mistake in its judgment.

On remand, the District Court may consider whether § 3C1.2 should have been applied instead of § 2F1.1(b)(4). It should be noted, however, that the presentence report in this case seems to have rejected the applicability of § 3C1.2, saying that there was "no information that the defendant impeded or obstructed justice" and that "the defendant was not driving the vehicle." J.A. at 122. It also appears that the Defendant herself was the only person actually injured in the chase. Furthermore, at least one court has held that to apply § 3C1.2 to a co-defendant, she must aid or abet, counsel, command, induce, procure or willfully cause the risk of injury; the "reasonable foreseeability" of a reckless getaway is not enough. See *United States v. Lipsey*, 62 F.3d 1134, 1136 (9th Cir.1995) (under coercive circumstances, defendant's entry into getaway car did not justify sentence enhancement where he either encouraged the driver to pull over or sat in silence). In this case, there is substantial evidence that Ms. Hall was acting at least in part under the control and coercion of her husband, Kenneth Hall, and application of § 3C1.2 may therefore be inappropriate.

### B. Additional Criminal History Points under U.S.S.G. § 4A1.2(c)(1)(B)

Defendant also contends that the District Court erred in computing her criminal history points. Section 4A1.2(c)(1)(B) of the guidelines provides that sentences for prior offenses be included in the calculation of criminal history if "the prior offense was similar to an instant offense." She asserts that four convictions for "worthless checks" are not "similar" to the crime of bank fraud for the purposes of applying the criminal history guideline, and we agree. Although she concedes that this correction does not change her criminal history category, and therefore does not change her sentence, it may affect her security classification within the U.S. Bureau of Prisons.

Courts have held in a variety of contexts that passing "bad checks" or overdrafts on one's personal account does not constitute fraudulent behavior. In *Williams v. United States*, 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982), the Supreme Court held that a check is not a factual assertion and therefore cannot be characterized as "true or false." Thus, writing a check for insufficient funds does not constitute knowingly making a false statement. *Williams*, 458 U.S. at 282, 290, 102 S.Ct. at 3090, 3094–95. This Circuit has held that mere "insufficient funds" convictions under Tennessee law are not crimes involving dishonesty or fraud. *United States v. Barb*, 20 F.3d 694 (6th Cir.1994) (prior misdemeanor convictions for "insufficient funds" did not involve dishonesty or fraud for the purpose of admissibility under F.R.E. 609(a)(2)).

As Defendant points out, there is a substantial difference between writing checks for basic family necessities using one's own name and one's own account, as was the case here, and engaging in a scheme of bank

fraud using false names and fake accounts in different states. The Sentencing Guidelines themselves acknowledge this difference in the commentary to § 4A1.2(c)(1)(B), which states specifically that the category of " '[i]nsufficient funds check,' ... does not include any conviction establishing that the defendant used a false name or non-existent account." U.S.S.G. § 4A1.2, comment (n. 13). If the Sentencing Commission had contemplated that "insufficient funds" violations were like bank fraud, it would not have made such a distinction in the commentary. Therefore, the four convictions for "worthless checks" were erroneously included in the Defendant's criminal history calculation under § 4A1.2(c)(1)(B).

### C. Downward Departure

■ Finally, Defendant argues that the district court failed to recognize its discretion to consider her extraordinary circumstances as bases for a downward departure. Although a district court's refusal to depart downward is not ordinarily appealable when the court is fully aware of the rules governing the exercise of its authority to depart, *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir.1995), a court's failure to depart downward because it was unaware of its discretion to do so is cognizable on appeal. *United States v. Landers*, 39 F.3d 643, 649 (6th Cir.1994).

■ In this case, there is overwhelming evidence that the Defendant's criminal actions resulted, at least in part, from the coercion and control exercised by her husband. On the record before us, she had not been involved in any bank fraud schemes before she met Mr. Hall, and, according to the forensics evaluation of the Bureau of Prisons, she continued her criminal activity only after he threatened to kill himself, to kill her, to hurt their friends and pets, and to commit bank robbery using violent means. J.A. at 99. His own letters to Ms. Hall from prison describe scenes from the past in which he threatened her with a gun. J.A. at 89. These circumstances indicate that a departure may be appropriate under U.S.S.G. § 5K2.12, which permits departure because of serious coercion not amounting to a complete defense: "If the defendant committed the offense because of serious coercion ... or duress under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range." U.S.S.G. § 5K2.12. The failure of the probation report and the district court to take note of these circumstances or to discuss this issue indicates that it was not aware of the applicability of § 5K2.12 and of its discretion to depart downward. It must consider coercion as a basis for departure.

We therefore remand to the district court to make findings of fact and conclusions of law as to whether downward departure is appropriate for this Defendant, noting in particular the coercive effect of her husband's abuse in light of her related emotional problems.

### D. Restitution Amount

■ Defendant contends that the district court should not have ordered $27,500 in restitution given that she has few financial resources and bleak potential for future earnings. Defendant has a GED obtained in prison, a spotty employment history, and serious emotional problems. The Government, however, argues that Defendant failed to raise the issue of restitution below and has therefore waived it on appeal. As the Government points out, despite filing objections to other findings of the presentence report, the Defendant never objected to its recommended restitution amount. The Sixth Circuit has held that where no objection is made to the order of restitution at sentencing, the appellate court reviews for plain error. *United States v. Nagi*, 947 F.2d 211, 213 (6th Cir.1991), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992).

The procedure for issuing an order of restitution is set forth in 18 U.S.C. § 3664 (1988). It provides, in relevant part, that the court "shall consider ... the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." The section also provides that the court may rely on the presentence report to evaluate these factors.

■ The Sixth Circuit has held repeatedly that the district court is not required to make findings on the defendant's

financial condition. *See e.g., United States v. Purther,* 823 F.2d 965 (6th Cir.1987); *United States v. Padgett,* 892 F.2d 445 (6th Cir.1989) (per curiam). In this case, the presentence report, as well as other documents before the court, contained information related to defendant's financial position and earning ability. J.A. at 157. The district court's order of restitution, therefore, does not amount to plain error, although we may have exercised our discretion differently as a district court.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's assessment of a two-level increase in offense level under § 2F1.1(b)(4), the assessment of four criminal history points for "worthless check" convictions under § 4A1.2(c)(1)(B), and its failure to depart downward. We REMAND for resentencing in accordance with this opinion. We AFFIRM the district court's order of restitution.