**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory L. CHRISTIAN Defendant–
Appellant.**

No. 01–6058.

United States Court of Appeals,
Sixth Circuit.

Feb. 3, 2003.

Before MARTIN, Chief Circuit Judge; DAUGHTREY, Circuit Judge; and O'MALLEY, District Judge.*

PER CURIAM.

Defendant-appellant Gregory L. Christian appeals his sentence, imposed upon him by the district court pursuant to his plea of guilty to carjacking. For the reasons that follow, we **AFFIRM**.

**Background**

Defendant Christian, together with friends Deslan Hurley and Keith Caudill, spent the afternoon of January 4, 2001 drinking at Hurley's mother's house in Georgetown, Kentucky. Later, while walking from Hurley's mother's house to Caudill's house, they came upon a woman, Susan Moore, unloading groceries from

---

* The Honorable–Kathleen O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

her car. The men told Moore they had suffered car trouble and asked her for a ride to Caudill's girlfriend's house. Sensing trouble, and afraid the men would follow her into her home if she declined, Moore agreed. The men climbed into Moore's car; Hurley rode in front, while Christian and Caudill rode in back.

Even though they were not near Caudill's girlfriend's house, Hurley told Moore, "This is the spot. You can drop us off here." Moore stopped the car, at which point Hurley pulled a gun, held it to Moore's head, and demanded her purse and car keys. Moore stalled by asking if they needed money, and Hurley replied "yes." Moore then got $15 from her wallet and gave it to Hurley. Hurley was not pleased with this amount. Christian got out of the car, opened Moore's car door, and put his hand on her shoulder. Moore stated she would get more money if Christian removed his hand. Christian did so, and Moore got another $100 out of her purse. She then asked if they wanted her to get out of the car. Hurley, still holding the gun to her head, said "yes." Moore did so, and the men drove off.

The three men then drove to Indiana. The next day, police officers stopped them for reckless driving; they were all using alcohol and pills, and Christian had passed out for some of the ride. The arresting officers learned the car was stolen, and all three men were eventually charged in a three-count indictment with: (1) conspiracy to commit a carjacking, in violation of 18 U.S.C. § 371; (2) aiding and abetting a carjacking, in violation of 18 U.S.C. §§ 2119 & 2; and (3) aiding and abetting the transportation of a stolen car, in violation of 18 U.S.C. §§ 2312 & 2. As it turned out, the gun that Hurley used was inoperable, so the government did not charge any defendant with a violation of 18 U.S.C.

§ 924(c), which would have carried a mandatory seven-year consecutive sentence.

In subsequent statements, Christian asserted he and Caudill had no idea Hurley was going to use his gun or commit a carjacking, and that, after driving off, they told Hurley they did not want to have any part in this crime. Christian further asserted that Hurley responded by forcing them to do as Hurley said—Hurley would not let them out of the car, and Hurley fought with Christian, taking away Christian's knife because he feared Christian would stab him during their drive into Indiana.

Pursuant to a plea agreement, Christian pled guilty to Count II. The plea agreement stated that: (1) "[n]o agreement exists about what [Christian's] sentence will be;" (2) the statutory maximum was 15 years in prison; and (3) the parties both recommended that the base offense level would be 20, plus 4 for using a dangerous weapon, plus 2 for carjacking, minus 3 for acceptance of responsibility, yielding a total offense level of 23. The Pre–Sentence Investigation Report ("PSIR") used this same calculation; together with a Criminal History category of VI, the sentencing range was 92–115 months. Christian did not object to the PSIR. Hurley and Caudill also pleaded guilty to Count II.

Before accepting the pleas, the district court engaged in a meeting with counsel for all defendants and discussed anticipated sentencing calculations. The conversation reveals that Hurley (the gunman), like Christian, also had a Criminal History category of VI and a total offense level of 23, yielding a sentencing range of 92–115 months. Caudill had a Criminal History category of I, so he faced a lower sentencing range of 51–63 months.[1] At the pre-

1. The record is somewhat contradictory and   does not reveal the precise guideline calcula-

plea conference with counsel, however, the Court announced that it would award Caudill a 2–point reduction for being a minor participant, pursuant to U.S.S.G. § 3B1.2. Christian moved for a similar reduction, asserting he was as minor a participant as was Caudill, and that the Assistant United States Attorney had told him previously that there would be no role adjustments given to any of the defendants. Despite suggestions that Christian was "just trying to help Moore" and "did not make her do anything," the district court concluded that Christian had put his hand on Moore in a threatening manner. For that reason, the court would not grant the request by Christian to characterize his role as minor and adjust his offense level accordingly.

Christian also indicated that he was prepared to move for a downward departure based on U.S.S.G. § 5K2.12, which states that, if the defendant "committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range." The district court told counsel that it was inclined to deny that motion as well, essentially on the same grounds. The district court concluded that Christian's placing of his hand on Moore, in what Moore perceived as a threatening manner, was an independent aggressive act not directed by Hurley; thus, the motion for departure based on coercion was not well-taken. Christian then entered the previously agreed-upon plea with full knowledge of the district court's view of these sentencing issues.

At sentencing, the district court revisited all of the relevant sentencing calculations, including those under §§ 3B1.2 and 5K2.12, and sentenced Christian to 92

months incarceration, which was at the very bottom of the applicable range. The Court sentenced Hurley to 92 months incarceration as well, and sentenced Caudill to 24 months.

### Analysis

Christian appeals, first, the district court's refusal to grant a downward departure based on coercion (pursuant to U.S.S.G. § 5K2.12), and, second, the district court's refusal to grant his motion for downward adjustment based on being a minor participant (pursuant to U.S.S.G. § 3B1.2). We examine these two contentions in the order Christian raises them.

A district court's decision not to depart downward is not appealable under 18 U.S.C. § 3742(a) if "the guideline range was properly computed, the district court was not unaware of its discretion to depart from the guideline range, and the sentence was not imposed in violation of law or as a result of an incorrect application of the guidelines." *United States v. Logan,* 250 F.3d 350, 374 (6th Cir.2001), *cert. denied,* 534 U.S. 895, 122 S.Ct. 216, 151 L.Ed.2d 154 (2001); *United States v. Organek,* 65 F.3d 60, 63 (6th Cir.1995); *United States v. Meyers,* 952 F.2d 914, 920 (6th Cir.1992). District courts do not have to state affirmatively that they are aware they have discretion to grant downward departures, and have declined to do so. *United States v. Byrd,* 53 F.3d 144, 145 (6th Cir.1995). District judges are normally familiar with the Sentencing Guidelines and we may assume a sentencing court properly exercises its discretion when it determines downward departure is unwarranted. *Id.* Finally, "[i]n reviewing federal guideline sentences, the factual findings of the district court are reviewed on the basis of a clearly

---

tion used by the district court to determine Caudill's sentence. This lack of clarity with regard to Caudill, however, is irrelevant and immaterial to the issues raised by Christian in this appeal.

erroneous standard." *United States v. Berridge,* 74 F.3d 113, 116 (6th Cir.1996).

■ With regard to duress, Christian argues on appeal that the district court was unaware of its discretion to depart downward under § 5K2.12. The transcripts reveal, however, that the district court understood clearly the sentencing issues, referred specifically to the applicable guidelines, and simply concluded that Christian did not deserve the requested departure, based on the facts of the case. The district court heard Christian's arguments for a downward departure and his characterization of the facts as evidence of duress, so it was well aware it could depart downward based upon a duress argument, if it chose to do so. There is certainly a factual basis for the district court's conclusion that Christian's placement of his hand on Moore's shoulder was meant to be threatening, and not helpful, as he maintains.

Christian notes that the PSIR states he was forced to participate by Hurley, but the PSIR actually states only that Christian, himself, asserted he was under duress. Even accepting Christian's statements, it is notable that any alleged duress occurred only after the actual carjacking, once Christian and Caudill supposedly wanted to leave Hurley; Christian was not forced to get in the car with Hurley, nor was he forced to put his hand on Moore.[1] The district court found this distinction meaningful, and there is no clear error. Reviewing the record below, we hold that the district court was aware of its discre-

tion to grant a downward departure under § 5K2.12; properly computed the Sentencing Guidelines range; did not impose the sentence in violation of law; and did not apply the Sentencing Guidelines incorrectly.

■ Christian also sought a reduction under Sentencing Guidelines § 3B1.2, based on the assertedly minor role he played in the carjacking. This section allows for an adjustment downward of two to four levels, based upon the degree of participation in the criminal activity.

We review for clear error the district court's findings of fact regarding a defendant's entitlement to a minor participant reduction. *United States v. Searan,* 259 F.3d 434, 447 (6th Cir.2001); *United States v. McDonald,* 1999 WL 149658 at *14 (6th Cir. Mar.1, 1999). A defendant must prove entitlement to a minor or minimal role reduction by a preponderance of the evidence. *Searan,* 259 F.3d at 447; *McDonald* at * 14. To qualify for the reduction, the court must find the defendant is less culpable than most other participants and "substantially less culpable than the average participant" in the criminal act. *United States v. Miller,* 56 F.3d 719, 720 (6th Cir.1995). A defendant does not become a minor participant in a scheme merely because others were responsible for its planning and arrangement. *Searan,* 259 F.3d at 448; *Miller,* 56 F.3d at 720. Though a defendant may be less culpable than co-defendants, this does not automatically establish entitlement for a

---

1. Christian likens his case to *United States v. Hall,* 71 F.3d 569 (6th Cir.1995). In *Hall,* we remanded the case to the district court for consideration of whether a downward departure was warranted, because the district court failed to take note of evidence of coercion. *Id.* at 573. Unlike the circumstances in which Christian committed his offense, however, the defendant in *Hall* had no involvement in the criminal activity until her co-defendant husband coerced and controlled her by threatening to kill himself and her, to hurt friends and pets, and to commit bank robbery by violent means unless she continued the criminal activity. *Id.*

**48**

minor role reduction. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995).

Christian claims he was less culpable than Hurley because Hurley used a gun, and that his own role was as minor as was Caudill's. The district court found, however, that, unlike Caudill, Christian voluntarily committed an act of aggression when he got out of the car and put his hand on Moore's shoulder. The sentencing court found that, given the intimidating circumstances, the act of touching the victim placed Christian in a greater participatory role than that of Caudill, who merely sat still. Ultimately, Christian is unhappy that Caudill received a role reduction and that he did not. But Caudill sat in the back seat during the entire carjacking and did not say anything or do anything. Christian got out of the car and put his hand on Moore in a manner the district court found was threatening.

We conclude that the district court did not make clearly erroneous factual findings and was justified in denying Christian of a minor role reduction under § 3B1.2 of the guidelines. Christian did not prove, by a preponderance, that he was entitled to a reduction for playing a minor role in the carjacking. Accordingly, we AFFIRM Christian's sentence.