NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0251n.06
Filed: April 5, 2007

No. 04-6520

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| *Plaintiff-Appellee,* | ) |
| | ) |
| v. | )On Appeal from the United States |
| | )District Court for the Eastern District |
| | )of Tennessee at |
| DIANNA BLAIR-TORBETT, | )Chattanooga |
| | ) |
| | ) |
| *Defendant-Appellant*. | ) |

Before: **DAUGHTREY, Circuit Judge; COOK, Circuit Judge;** and **WEBER, District Judge.**[*]

**PER CURIAM.**

Defendant-Appellant Dianna Blair-Torbett appeals the sentence imposed by the district court after her guilty plea for violations of Title 18 U.S.C. § 2314. Although the sentencing occurred prior to the Supreme Court's opinion in *United States v. Booker*, 543 U.S. 220 (2005), Blair-Torbett relies on *Booker* on appeal, contending that (1) her 72-month sentence was improper because facts not admitted by her during her plea were used to increase her sentence in violation of the Fifth and Sixth

---

[*] The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

1

Amendments of the United States Constitution; (2) the *Booker* error was not harmless pursuant to *United States v. Christopher*, 415 F.3d 590, 593-94 (6th Cir. 2005); and (3) the district court erred by ordering restitution for loss amounts exceeding the loss caused by the specific conduct to which she pled guilty, in violation of the Victim and Witness Protection Act, 18 U.S.C. § 3663(a)(2).[1]

For the reasons set forth below, we conclude that error resulted from the district court's mandatory application of the sentencing guidelines. *See, United States v. Barnett,* 398 F.3d 516 (6th Cir.), *cert. dismissed,* 545 U.S. 1163 (2005). But, after careful consideration, we further conclude that the error is harmless and we therefore affirm. *United States v. Brown*, 444 F.3d 519 (6th Cir. 2006); *United States v. Christopher*, 415 F.3d 590 (6th Cir. 2005).

**Factual & Procedural Background**

On April 22, 2003, an indictment was filed charging Blair-Torbett and co-defendant, William D. Brannon, with twenty-one counts of transporting sums of money across state lines in violation of 18 U.S.C. § 2314 from April 23, 1998 through September 26, 2000. Blair-Torbett admitted, while under oath, the truth of the statement of facts presented at the sentencing hearing.

Co-defendant Brannon was tried to a jury and convicted on Counts One through Fourteen, Sixteen, and Eighteen through Twenty-One. He was sentenced to ninety-seven months.

---

[1] In her *pro se* brief, Blair-Torbett raises for the first time additional assignments of error: her plea was involuntary, she suffered double jeopardy, "failure of the indictment," and attorney misconduct. Because these issues were not presented to the district court, they cannot be reviewed on appeal. *Brown v. Marshall*, 704 F.2d 333, 334 (6th Cir.), *cert. denied,* 464 U.S. 835 (1983). Moreover, the claim of ineffective assistance of counsel is more properly raised by motion to vacate under 28 U.S.C. § 2255.

2

Before her trial, Blair-Torbett filed a notice of intent to plead guilty and entered a plea of guilty to Counts One and Fourteen of the indictment. There was no written plea agreement, but the United States indicated that after she was sentenced on Counts One and Fourteen, Counts Two through Thirteen and Counts Fifteen through Twenty-One would be dismissed.

Prior to the guilty plea hearing, the United States had filed a written document entitled "Factual Basis for Plea of Dianna Blair-Torbett," which provides:

> If this case were to go to trial, the proof would show that the defendant, Dianna Blair-Torbett, devised and intended to devise a scheme to defraud investors from beginning at least as early as June 5, 1997, and continuing until on or about July 26, 2002. The defendant operated through various entities, including McMinn Consultants, Ltd.; Asset Management Associates; International Ventures, Ltd.; Capitol Reserve Society; and International Ventures Associates. The defendant conducted business from her residence in Etowah, Tennessee, which is within the Eastern District of Tennessee.
>
> The substance of the scheme was that the defendant would falsely represent to potential investors that, among other things, her entities would double or triple the investor's money within a short period of time, typically six months, and that the investment would receive a 24% annual interest payment. Moreover, the defendant claimed that the investments would be "secured" and "collateralized" by "gold concentrate" located in vaults maintained on the premises of West Texas Metals in El Paso, Texas. The defendant purported to require a minimum investment of $50,000.
>
> Beginning on or about June 5, 1997, the defendant participated in the scheme with William Devers Brannon, a sometime resident of Knoxville, Tennessee, and the owner and operator of West Texas Metals located in El Paso, Texas. Ms. Blair-Torbett entered into a number of contracts with the defendant, one of which they executed in June 1997, that required her to pay $1,200,000,000 per year as minimum payment for a term of five years. Ms. Blair-Torbett agreed to act as the financing arm of West Texas Metals and Brannon.
>
> Thereafter, during the period August to November 1997, the defendant Brannon, d.b.a. Golden West Estates, purchased magnetite from Cobra Mining Company in New Mexico. The magnetite cost $20 a ton. McMinn Consultants, using investor money, purchased the magnetite and it was shipped to West Texas Metals in El Paso and placed in vaults also paid for by McMinn Consultants with

3

investor funds. This magnetite was described by both the defendants, Brannon and Blair-Torbett, as being "gold concentrate." Investors were advised that their investments were backed by this gold concentrate, which the defendant Brannon valued in the millions of dollars. Defendant Brannon also claimed that the West Texas Metals property contained gold with an "estimated in ground value per appraisal of $45,513,000."

Numerous investors fell victim to this scheme. In particular, Dr. Jerry Tuggle invested $50,000 on or about April 23, 1998 by sending check number 0224 from the State of Alabama to the State of Tennessee. In addition, another investor, the St. Paul's Community Baptist Church, located in Brooklyn, New York, invested hundreds of thousands of dollars with the defendant. On or about January 28, 1999, the St. Paul's Community Baptist Church issued check number 111 in the amount of $301,000 payable to McMinn Consultants, which check was transported across state lines from the State of New York to McMinn Consultants in the Eastern District of Tennessee.

At the hearing, the following exchange occurred:

DEFENSE COUNSEL: We would offer a couple of corrections, or clarifications, if you will. And the first one would be, in the first sentence of the document, that says – that begins, "If this case were to go to trial," the dates that are alleged in this state that the fraudulent behavior began beginning at least as early as June 5th 1997 and continuing until on or about July 26th, 2002. And we would suggest that that later date of July 26th 2002, is more possibly until July 26th, 2002 (sic).

The second correction or comment that we would make would be in the first paragraph on Page 2, and it would be the second sentence of that paragraph, that begins that "Ms. Blair Torbett entered into a number of contracts with the defendant," and that would be the defendant Mr. Brannon, "one of which they executed in June 1997, that required her to pay $1,000,200,000 per year." We would --

THE COURT: Is that 200,000 or 200 million?

DEFENSE COUNSEL: I'm sorry. Two hundred million. Thank you for the correction, Your Honor. We see all these zeros, sometimes we get a little confused. I apologize. We would offer that that was an initial contract, that other contracts were executed later, but that was the initial contract.

The final sentence of that paragraph begins, "Ms. Blair Torbett agreed to act as the financing arm of West Texas Metals." We would suggest that Ms. Blair Torbett agreed to act as one of the financing arms. In other words, there were other

4

financing arms.

And those would be the only comments or corrections we would make to the factual basis.

The district court then proceeded as follows:

THE COURT:     Ms. Blair Torbett, you heard what Ms. LaLumia just said?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:     Do you agree with her statements?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:     Is there anything at all in this "Factual Basis for Plea of Diana Blair Torbett" that, to your own knowledge, is false?

THE DEFENDANT:  No, Your Honor.

THE COURT:     Are you offering to plead guilty because you are in fact guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:     It is the finding of the Court in the case of the United States versus Diana Blair Torbett that the defendant is fully competent and capable of entering an informed plea and that her plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Her plea is therefore accepted, and she is now adjudged guilty of these two offenses.

The Court will set sentencing in accordance with the Sentencing Reform Act of 1984 and the Court's local rules.

The presentence report recommended a guideline range of 51 to 63 months based on a

Total Offense Level of 24. It was calculated as follows:

+ 6    U.S.S.G. § 2F1.1
+13    loss>$2,500,000 but >$5,000,000
+ 2    scheme to defraud more than 2 victims

5

| | |
|---|---|
| + 2 | use of Postal Service for fraud |
| + 2 | sophisticated means by using off-shore accounts |
| + 2 | U.S.S.G. § 3B1.3 |
| 27 | sub total |
| - 3 | acceptance of responsibility |
| 24 | Total Offense Level |

The defendant had a criminal history category of I. The presentence report indicated in the "Victim Impact" section that, due to the defendant's fraudulent activity, most of the victims were financially ruined. The presentence report identified some individuals by the time of sentencing whose losses totaled $3,432,129.00. An order of restitution as to all victims was recommended in the amount of $4,845,165.00. An addendum to the presentence report was submitted recommending a credit be given against these figures for any amounts repaid to victims. No objections were filed to the presentence report.

The defendant filed a motion for downward departure from the offense level established in the presentence report based upon her life experiences, a difficult childhood, abuse of alcohol and drugs, and family circumstances. Specifically, she argued that she was the sole source of care for her minor daughter, who was partially blind, and her adoptive mother who suffered from Alzheimer's Disease. Defendant also filed a pro se motion for downward departure in which she advanced an argument that the enhancements to her offense level overlapped each other, citing *United States v. Lauerson*, 348 F.3d 329, 344 (2d Cir. 2003), and *United States v. Jackson*, 346 F.3d 22, 26 (2d Cir. 2003).

The government filed a motion for upward departure. It argued that a longer sentence was warranted than that established by the guideline calculation of 51 to 63 months because of the hardship suffered by the investors.

6

At the sentencing hearing, the district court heard evidence in support of the motions for departure. The United States produced a number of witnesses who testified that they had suffered severe psychological and emotional damage, in addition to their economic damages, as a result of being defrauded of their retirement and life savings. The district court also discussed letters received from victims and the defendant's abuse of the trust the victims had placed in her to the extent they each gave her their life savings. The district judge clearly understood the decision to grant or deny these motions for departure was committed to his discretion.

The district court denied defendant's motion and granted the government's motion, citing U.S.S.G. § 2F1.1, Application Note 11, which provides:

> In cases in which the loss determined under Section (b)(1) does not fully capture the harmfulness and seriousness of the conduct, an upward departure may be warranted. Examples may include the following: The offense caused reasonably foreseeable physical or psychological harm or severe emotional trauma, and the offense involved the knowing endangerment of the solvency of one or more victims.

The district court emphasized that a message would be sent to other white collar criminals by the upward departure, sentenced the defendant to 72 months to be followed by three years supervised release, and recommended that she participate in the 500-hour drug treatment program while incarcerated.

In denying the request for a downward departure, the district judge noted that the cumulative effect of the enhancements was something envisioned by the Sentencing Commission, particularly as evidenced by the fact that at some points in the guidelines there are caps on the amount of enhancements which can be applied to one defendant. The district judge further found that the defendant's personal problems and responsibilities were also not outside the heartland of cases.

At no time either before or during the sentencing hearing did the defendant object to the

7

presentence report's recommendation that the loss in this case was between $2,500,00.00 and $5,000,000.00 or that restitution should be ordered to all victims of the defendant's scheme to defraud. At sentencing, defendant did object to the amount of restitution on the ground that the restitution order to a victim should be reduced by any amount already repaid to the victim. The district court agreed and ordered the defendant to pay restitution in the amount of $4,845,165, specifically ordering that she receive credit for all payments made toward the criminal monetary penalties imposed.

Blair-Torbett presented no evidence at the sentencing hearing rebutting the amount of restitution stated in the presentence report.

**Analysis**

**A. *Booker* Challenge**

While this case was pending on appeal before this Court, the United States Supreme Court issued its decision in *United States v. Booker,* 543 U.S. 220 (2005). In *Booker*, the United States Supreme Court held that the Sixth Amendment requires that facts necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. *Booker*, 543 U.S. at 244. But rather than mandate that all such facts must be found by a jury, the Supreme Court severed 18 U.S.C. § 3553(b), making application of the sentencing guidelines advisory rather than mandatory. Moreover, the Supreme Court expressly stated that its "remedial interpretation of the Sentencing Act" must be applied "to all cases on direct review". *Booker,* 543 U.S. at 268. As a

8

result, we must now determine whether the district court's error in sentencing under the mandatory guideline sentencing system was harmless. *Christopher*, 415 F.3d 590, 593 (6th Cir. 2005); *McDaniel,* 398 F.3d 540, 546 (6th Cir. 2005).

In *United States v. Hazelwood*, 398 F.3d 792 (6th Cir. 2005), this Court held that a remand for an error in sentencing is not necessary if, after our *de novo* review, we are certain that any error was harmless, *i.e.*, that any such error did not affect the district court's selection of the sentence imposed. 398 F.3d at 801. As noted by this Court in *Christopher*, the Supreme Court, "rather than requiring that all facts supporting enhancements be proved to the jury, instead severed 18 U.S.C. § 3553(b), thereby rendering most guideline enhancements advisory." 415 F.3d at 593. Under *Booker,* there is no Fifth or Sixth Amendment violation when a sentencing judge exercises genuine discretion within a clearly defined statutory range. *United States v. Harris*, 397 F.3d 404, 411 (6th Cir. 2005).

In *United States v. Brown*, 444 F.3d 519 (6th Cir. 2006), this Court acknowledged a *Booker* error, but concluded that the district court's error in following the law applicable on the day of Brown's resentencing was harmless because the sentence imposed was based upon a significant upward departure that resulted in a reasonable sentence. As in this case, the district court in *Brown* "correctly observed that it was bound to follow the precedent of this circuit, which at the time was that the federal sentencing Guidelines were applicable, constitutional and mandatory." *Brown*, 444 F.3d at 521(citing *United States v. Koch,* 383 F.3d 436 (6th Cir. 2004), *vacated*, 544 U.S. 995 (2005)). *Brown* then held that the district court's errors did not affect the selection of the sentence imposed because the district court exercised its discretion to grant an upward departure that increased the sentence above the Guideline recommended range. *Brown*, 444 F.3d at 522.

9

We are mindful not to usurp the discretionary power granted to the district courts by *Booker* by assuming that the district court would have given the same sentence post-*Booker*. *Barnett,* 398 F.3d at 530 (quoting *United States v. Oliver*, 397 F.3d 369, 381 n.3 (6th Cir. 2005)). In this case, however, as in *Brown*, we can be certain that any *Booker* error was harmless because after considering both a motion for downward departure and a motion for upward departure, the district court granted a discretionary upward departure from the guideline range, explained its reasons in the record, and imposed a reasonable sentence.

As in *Brown,* the district court departed upward from the recommended guideline range after a discussion of the 18 U.S.C. § 3553(a) factors as they applied to a white collar criminal that bilks a substantial number of victims out of their life savings. As in *Brown*, clearly the sentence determined by the district court resulted from the district court's exercise of discretion to depart upward and its conclusion that the sentence was sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553.

The *Lauerson* and *Jackson* cases cited by the defendant do not advance Blair-Torbett's position. Both cases, although ordering a remand, left to the discretion of the district judge the decision whether to depart upon resentencing, supporting our conclusion that the requirement of the *Booker* holding is satisfied when the district court, in deciding the motions to depart, exercises its independent discretion in determining the sentence.

Having concluded the *Booker* error is harmless, we must review defendant's sentence for reasonableness under *Booker*. *Christopher*, 415 F.3d at 594; *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). A district court need not recite the § 3553(a) factors, but must articulate its reasoning in deciding to impose a sentence in order to allow for reasonable appellate review. *United*

10

*States v. Kirby,* 418 F.3d 621, 626 (6ᵗʰ Cir. 2005). The district court started with an analysis of the applicable guidelines including a discussion of Application Note 11. The district court thoroughly considered the seriousness of the offense and the effect on the numerous victims. The district court discussed the need to deter criminal conduct by the defendant and the need for the sentence imposed to send a message to deter others from criminal conduct. The district court's final sentence was not selected at random, but was a reflection of its consideration of the guidelines and the other § 3553(a) factors. The district court clearly exercised its discretion and imposed a procedurally and substantively reasonable sentence in this case.

## B. Restitution

In this case, Blair-Torbett admitted under oath that she devised and intended to devise a scheme to defraud and acknowledged that numerous investors fell victim to this scheme. It, therefore, was the mandatory duty of the district court at sentencing to order that the defendant make restitution to the victims who directly suffered a pecuniary loss in the course of her scheme, in accordance with 18 U.S.C. § 3664. 18 U.S.C. § 3663A. Pursuant to 18 U.S.C. § 3664, the probation officer included in the presentence report information sufficient to allow the district court to exercise its discretion in fashioning a restitution order, including a complete accounting of the losses to each identifiable victim.

As a result of the report, the district judge had reliable information, not contested by Blair-Torbett, that she had utilized off-shore bank accounts in the Bahamas, that she obtained a $90,000,000.00 insurance policy insuring the "gold concentrate" and later attempted to defraud the

11

insurance company claiming the "gold concentrate" was stolen, and that she transferred investors' funds to accounts in the Bahamas to conceal these funds from investors and investigators. Numerous investors fell victim to this scheme. The known victim loss amounts not associated with Dominion Trust totaled $1,518,506.96. The total amount of loss attributable to the defendant was $4,845,115.00. Thirty-two victims returned declaration of loss forms that total $3,432,129.00. The affidavit of FBI Special Agent Robert C. Bissell confirmed that the total amount invested with one of the Blair-Torbett entities, McMinn Consultants, exceeded $8 million dollars.

Blair-Torbett failed to file with the probation officer a requested affidavit describing her financial resources as required by 18 U.S.C. § 3664(d)(3), failed to present any evidence regarding any moneys that had been repaid to investors, and failed to object to the presentence report. Nevertheless, she now challenges the restitution order, contending that she should be required to pay restitution only to the two victims named in the counts of conviction because she did not admit that she devised a scheme to defraud, as would be necessary for an order of restitution under 18 U.S.C. § 3663A. Clearly, Blair-Torbett admitted under oath the scheme to defraud in open court as set forth in the "Factual Basis for Plea of Dianna Blair-Torbett." The information provided in the presentence report, including the required restitution, was in the record and available to the parties and the Court.

As previously noted, defendant made no objection to the amount of loss used to calculate her offense level, although she did question at sentencing the amount of restitution ordered. However, she did so solely because it was not reduced by the amounts the victims had been previously reimbursed. Moreover, she did not object to the imposition of the specific amounts of restitution found to have been suffered by each identified victim. Because her objection to the order of

12

restitution made at sentencing was different from that raised on appeal, the issue will be reviewed for plain error. *See United States v. Hall*, 71 F.3d 569, 573 (6th Cir. 1995). To establish plain error, a defendant must show that (1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004); *see also United States v. Olano*, 507 U.S. 725 (1993).

In *Hughey v. United States*, 495 U.S. 411, 420 (1990), the Supreme Court held that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *United States v. Sosebee*, 419 F.3d 451, 459 (6th Cir. 2005). Under 18 U.S.C. § 3663(a)(2), a defendant convicted of "an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity" must make restitution to "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern."

Our review of the record supports the conclusion that there was no error committed by the district court that seriously affected the fairness, integrity or public reputation of this judicial proceeding and that the district court's restitution order is supported by a preponderance of the evidence and information in the record.

## Conclusion

For the reasons set out above, we **AFFIRM** the judgment of the district court.

13