**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0887n.06**

**Nos. 11-1731/12-1186**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 15, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| ASANTE MOLEFI PARKER, and | ) | **O P I N I O N** |
| ZENOBIA MONIQUE BAILEY, | ) | |
| | ) | |
| *Defendants-Appellants*. | ) | |

BEFORE:     DAUGHTREY, COLE and WHITE, Circuit Judges.

COLE, Circuit Judge.  Defendants-Appellants Asante Molefi Parker and Zenobia Monique Bailey appeal their sentences for participation in a conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846.  Both pleaded guilty to the drug conspiracy offense, and Parker also pleaded guilty to conspiracy to launder the proceeds thereof in violation of 18 U.S.C. § 1956(h) and (a)(1)(B)(i).  Parker contends that the district court clearly erred during sentencing by adding two levels to his base offense level for possession of a dangerous weapon.  Bailey contends that her 168-month sentence was substantively unreasonable because the district court failed to properly consider her mental issues and whether she acted under coercion or duress.  For the reasons described below, we affirm both sentences.

## I. BACKGROUND

### A.  Facts

As he admitted in his plea agreement, Parker "has earned his living primarily by selling illegal drugs."  In 2008, Parker's cousin introduced him to Bailey, and Parker began giving her money—up to $100,000 at a time—to buy marijuana, which would then be driven from Arizona to Michigan in disguised delivery vans.  Bailey claims that she agreed to participate only in order to repay approximately $300,000 stolen by her ex-husband from Wallenton Reuben Walters (another conspirator) and only after four men threatened to kill her and her children in absence of payment.  Bailey states that she became "intimately involved" with Walters to neutralize the threat, and then became involved in the conspiracy as a result.  Bailey participated by purchasing vehicles, paying for hotel rooms, and recruiting drivers for the operation, among other acts.

Parker also received additional loads of marijuana, which he distributed and sold.  Over the course of the conspiracy, over 1,000 pounds of marijuana were transported from Arizona to Michigan.  Parker laundered his profits by buying jewelry and automobiles, and by converting some of it to cashier's checks, which he used to buy a home.  A federal search warrant executed at Parker's home on August 2, 2010 revealed two guns in a basement bedroom: one in the dresser and one between the mattress and bedspring.  Officers also discovered 459.6 grams of marijuana in the residence.

### B. Sentencing

On October 28, 2010, Parker pleaded guilty to conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), and 846, and conspiracy to launder

money, in violation of 8 U.S.C. §§ 1956(a)(1)(B)(i) and (h). The presentence investigation report ("PSR") calculated Parker's total offense level as 39: the base level for the conspiracy and possession with intent to distribute charge was 32, with a two-point enhancement added for possession of a dangerous weapon, as well as other enhancements for violation of 18 U.S.C. § 1956, sophisticated laundering, and Parker's role in the offense, and a reduction taken for acceptance of responsibility. Additionally, the PSR contained a description of the guns located in the basement bedroom of Parker's residence. Parker objected to the enhancement for possession of a dangerous weapon, claiming that neither of the two firearms found in the basement had been involved in his commission of the underlying offense.

At Parker's sentencing hearing, the subject of the firearms was addressed at length, and Parker's attorney stated that he had "no objection" to the court's observation that firearms had been found in Parker's residence. The district court applied the enhancement for possession of a dangerous weapon. Parker was sentenced to 262 months imprisonment on count one, and 240 months on count two, to be served concurrently.

Turning to defendant Bailey, following her arrest, Bailey filed a notice of insanity defense and a motion for a psychiatric evaluation. Bailey subsequently underwent two evaluations and a period of psychiatric treatment. In August of 2011, she was determined competent to stand trial. She pleaded guilty to conspiracy with intent to distribute and conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), and 846.

Bailey's PSR calculated her total offense level as 33, with 32 points for the base offense, a four-point enhancement for her role in the offense, and a three-point reduction for acceptance of

responsibility. Bailey filed a motion for a downward variance, requesting that she receive the statutory minimum sentence on the basis of her abusive childhood and continuing mental and emotional difficulties, and because she had begun to participate in the marijuana conspiracy only "after her life and the lives of her children were threatened" by a co-conspirator. At the sentencing hearing, the court acknowledged the "very very difficult circumstances" in Bailey's life, but denied the requested variance, noting that Bailey "must be deterred" and that the court did not believe that Bailey's participation in the conspiracy was in any sense involuntary. Bailey received a sentence of 168 months in prison.

## II. ANALYSIS

### A. Parker's Enhancement for Possession of Dangerous Weapon

Parker argues that the district court should not have added two levels to his base offense level for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1), which states, "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." We review for clear error the district court's finding that Parker possessed a firearm during the conspiracy. *See United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003). A factual finding is clearly erroneous "when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). On appeal, Parker contends that the record fails to demonstrate either his actual or constructive possession of the guns seized.

In order to apply the dangerous-weapon enhancement, the government must prove by a preponderance of the evidence that (1) the defendant actually or constructively possessed the

weapon, *see United States v. Dunlap*, 209 F.3d 472, 477 (6th Cir. 2000), *abrogated on other grounds by United States v. Camacho-Arellano*, 614 F.3d 244 (6th Cir. 2010); and (2) that the dangerous weapon was possessed "during 'relevant conduct,'" *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003). "Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991) (internal quotation marks omitted), *overruled on other grounds by United States v. Randolph-Jackson*, 282 F.3d 369 (6th Cir. 2002). Relevant conduct is "all acts and omissions committed or aided and abetted by the defendant . . . that occurred during the commission of the offense of conviction, in preparation of the offense, . . . or that otherwise were in furtherance of that offense." *Id.* at 1459 (citing U.S.S.G. § 1B1.3(a)(1)). If the government demonstrates both these elements, the enhancement should be applied "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt 11(A). Parker challenges only the possession element on appeal.

There is sufficient evidence in the record to demonstrate Parker's dominion over the premises where the weapons were found. Parker admitted in a motion for reconsideration of bond that only he and his wife had keys to the locked room where the weapons were kept, and he described the house as his. At his detention hearing, Parker did not counter the prosecution's statement that one firearm had been found "under the defendant's bed." Furthermore, Parker did not object to the PSR's description of the house as "Parker's residence." Although the record does not indicate that the drug conspiracy was run out of Parker's residence, a large quantity of marijuana was found there, and at any rate, enhancement under § 2D1.1(b)(1) does not require that the weapon

have been located in an area where the criminal conduct at issue took place. *Cf. United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012) (noting that the two inquiries under § 2D1.1(b)(1) "collapse into a single factual determination" when "the weapon was present . . . where the crime was committed"). Under these circumstances, we cannot say that the district court clearly erred in determining that Parker had dominion over the premises where the weapons were found.

We reject Parker's characterization of these concessions as mere "argument[s] of counsel" and "not evidence." *See United States v. Ferreboeuf*, 632 F.2d 832, 836 (9th Cir. 1980) ("[W]hen a stipulation to a crucial fact is entered into the record in open court in the presence of the defendant, and is agreed to by defendant's acknowledged counsel, the trial court may reasonably assume that the defendant is aware of the content of the stipulation and agrees to it through his or her attorney."). The proper place to contest the accuracy or propriety of counsel's admissions after-the-fact is during an ineffective assistance of counsel claim pursuant to 28 U.S.C. § 2255. *See United States v. Garcia-Meza*, 315 F.3d 683, 687 (6th Cir. 2003).

**B. Bailey's Claim of Substantive Unreasonableness**

Bailey contends that her sentence was substantively unreasonable for two reasons. First, Bailey argues that the district court erred in denying her motion for a downward variance, pursuant to 18 U.S.C. § 3553(a)(1), on the basis of her mental health and emotional issues. Second, Bailey asserts that the court erred in failing to consider granting her a downward departure, pursuant to U.S.S.G. § 5K2.12, in recognition of Bailey's claims that she committed the offenses under coercion or duress. Bailey does not argue that her sentence was procedurally unreasonable.

"A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010) (quotation omitted). If a sentence falls within the guidelines range, and is properly calculated, this Court presumptively considers it reasonable, though the presumption can be rebutted. *United States. v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

We review Bailey's first claim, pertaining to her mental health, under an abuse-of-discretion standard. *See United States v. Alexander*, 543 F.3d 819, 822 (6th Cir. 2008). Abuse of discretion occurs when the district court errs on a question of law or clearly errs as to a question of fact. *See Beacon Journal Publ'g Co. v. Blackwell*, 389 F.3d 683, 684–85 (6th Cir. 2004).

In determining a defendant's sentence, a district court must consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). According to Bailey, the district court abused its discretion by failing adequately to take into account Bailey's history of mental illness and abuse at sentencing, and by finding that Bailey had attempted to feign mental illness.

However, the district court's conclusion that Bailey "attempt[ed] to feign mental illness" was limited specifically to the context of her competency to stand trial:

> [The Assistant U.S. Attorney] used the word, and I believe it, Miss Bailey is a malingerer. She tries to foist responsibility onto other people. The finding that she was attempting to feign mental illness to be found incompetent to stand trial, frankly, is consistent with other circumstances involving this case.

Bailey fails to cite anything in the record demonstrating that the district court broadly pronounced Bailey to be free from mental illness generally or "[s]chizoaffective [d]isorder" specifically. The district court's conclusion that Bailey tried to evade standing trial by feigning incompetence does not demonstrate that the court "completely misunderstood" her mental condition, as she alleges.

Bailey cites no authority to support her assertion that the district court abused its discretion by giving "an unreasonable amount of weight" to other factors and too little weight to Bailey's psychological condition. The district court acknowledged the abuse—including physical abuse— Bailey experienced as a child and an adult and twice described the circumstances of her life as "very very difficult." The court, as is its prerogative, also considered other factors, including the need to protect the public from future offenses by Bailey:

> Miss Bailey is a risk to the public. The amount of drugs that were dumped onto the streets of the State of Michigan and the Western District of Michigan as a result of her actions ruined many other families I'm sure. I appreciate the fact that she cares for her family, but she wasn't caring for the other families in the Western District of Michigan when she led this conspiracy and dumped all of these drugs onto the streets of our district.

> She must be deterred. I think she's a high risk to re-offend. She must be specifically deterred from criminal conduct, and I also must be mindful of general deterrence of others who might contemplate similar criminal activity.

The choice to prioritize deterrence was "squarely within [the court's] discretion." *See United States v. Trotter*, 418 F. App'x 482, 484 (6th Cir. 2011) (affirming sentence based on district court's determination that the "present effects" of the defendant's "horrific" childhood abuse "had to give way to the need of the public to be protected"). Furthermore, the final sentence was within the

guidelines range and is therefore presumed reasonable. *See Vonner*, 516 F.3d at 389–90. Bailey fails to demonstrate that the district court abused its discretion in weighing the § 3553(a)(1) factors.

We turn next to Bailey's duress and coercion claims. Because Bailey did not request the district grant to grant her a downward departure on the basis of these claims, we review them under the more demanding plain-error standard. *See United States v. Webb*, 403 F.3d 373, 380 (6th Cir. 2005). To prevail, Bailey must demonstrate that the district court (1) erred, (2) plainly, (3) that the error affected her substantial rights, and (4) that the error seriously affected the fairness, integrity or public reputation of judicial proceedings. *See id.* (citations omitted).

The district court did not err, much less plainly err, in failing to consider a downward departure on the grounds that Bailey may have been coerced into the conspiracy. U.S.S.G. § 5K2.12 permits a district court to depart downward "[i]f the defendant committed the offense because of serious coercion, blackmail or duress." The district court's failure to depart downward is appealable only when the district court is unaware of its discretion to make the departure. *United States v. Landers*, 39 F.3d 643, 649 (6th Cir. 1994). Bailey cites *United States v. Hall*, 71 F.3d 569, 573 (6th Cir. 1995), in which we held that "[t]he failure of the probation report and the district court to take note of [the possibility of coercion] or to discuss [coercion] indicates that it was not aware of . . . its discretion to depart downward" pursuant to § 5K2.12. However, in Bailey's case, the presentence report clearly noted Bailey's claim that she was coerced via threats to her life, and the district court appears to have referred to these allegations when it found that Bailey "tried to voice[1] primary

---

[1]The court probably meant "foist."

responsibility onto others." The district court stated, "I do not believe for one minute that she was anything other than a *willful* participant in this conspiracy" (emphasis added). This assessment of the facts properly precludes any possibility that § 5K2.12 applies, since a coerced participant is something "other than" a willful one. *Cf. Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 196 (3d Cir. 2005) (distinguishing willful acts from "product[s] of coercion or duress"); *United States v. Lazaros*, 480 F.2d 174, 176 (6th Cir. 1973) (holding it was "proper" to instruct a jury that "if defendant's statements . . . were indeed made as the result of coercion or duress," they should not be considered "willful" under perjury statute). The district court declined to credit Bailey's allegations of duress and coercion and therefore had no reason to consider a downward departure based thereon.

In addition to her sentencing claims, Bailey also contends, pro se, that her counsel provided ineffective assistance during trial by failing to pursue a duress defense, aggressively contest allegations that Bailey was malingering via additional medical records and testimony, present testimony of abuse and intimidation, and object to the leadership enhancement. "As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Woodruff*, 726 F.3d 845, 850 (6th Cir. 2013) (quotations omitted). However, we will review an ineffective assistance claim on direct appeal if the record is sufficiently developed. *Id.* The record in this case is not sufficiently developed, and therefore we decline to hear the claim or to remand for an evidentiary hearing regarding it.

### III. CONCLUSION

For the reasons above, we affirm the judgment of the district court.